## Annie B. Walker, Appellee, v. Chicago & Alton Railroad Company, Appellant.

1. EVIDENCE—*collateral matters should be excluded.* If upon cross-examination of a witness he has stated that he had had trouble with one of the parties to the action, it is error, in a close case, to permit such witness upon redirect to state the particulars of such trouble where the character of the recital was such as would tend to prejudice the jury.

2. NEGLIGENCE—*what does not tend to rebut.* Negligence is not a matter of intention, and it is proper to refuse to permit a witness to state why a particular act was not done, the not doing of such act being the basis of the charge of negligence.

Action in case for personal injuries. Appeal from the Circuit Court of Tazewell county; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the November term, 1908. Reversed and remanded. Opinion filed May 19, 1909.

W. R. CURRAN, for appellant; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

JESSE BLACK, JR., and WM. A. POTTS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

Appellee recovered a verdict and judgment in the Circuit Court of Tazewell county against appellant for $3,000 as her damages alleged to have been occasioned by the negligence of appellant in failing to keep its station and platforms and approaches thereto, in the town of Normal, properly lighted and in a reasonably safe condition.

The evidence discloses that appellant and the Illinois Central Railroad Company maintain a joint depot at Normal; that the two main tracks of appellant are located north of said depot, and that the main track of the Illinois Central Railroad Company is located west of said depot; that the depot platform adjacent to the south main track, which is the north bound track, is 234 feet in length and 12 feet in width at the point where the accident occurred, and that at that point said platform is elevated 14 to 18 inches above the roadbed of appellant's track; that between the north main track, which is the south bound track, appellant maintains a wooden platform for the accommodation of its passengers desiring to board and alight from its south bound trains; that at a point about 75 feet east from the depot is a cross-walk connecting the main depot platform with the platform between appellant's two main tracks, which cross-walk is six feet in width and practically on a level with the top of the rails upon appellant's track; that from appellant's depot platform to said cross-walk there is a step of 8 inches; that there were two oil lamps in the waiting room of the depot, and an oil lamp set upon a post at the south edge of the depot platform and almost directly opposite the cross-walk above mentioned; that there were four arc lamps located as follows:  One on Broadway street at a point 578 feet west of the depot, one on Linden street, at a point 485 feet east of the

depot, one on or near the Illinois Central right of way at a point 340 feet south of the depot, and one on or near said right of way at a point 328 feet north of the depot.

The evidence further discloses that about 6:15 P. M. on October 13, 1907, appellee accompanied by her sister, her father, her son and her little daughter arrived at the depot for the purpose of becoming a passenger to Minier upon the south bound train of appellant scheduled to leave Normal at 6:25 P. M.; that upon arriving at the depot appellee purchased two tickets and ascertained that appellant's south bound train was ten minutes late; that after checking her baggage she sat in the waiting room until the arrival of the train at 6:35 P. M.; that upon the arrival of said train, the same stopped so that the platform of the chair car nearest the locomotive was at a point about 20 feet east of the cross-walk leading from the depot platform to the platform between the two main tracks of appellant; that appellee went east from the depot on the depot platform for the purpose of reaching the platform between the two main tracks, by means of the cross-walk, and that when she reached a point upon the depot platform where she supposed the said cross-walk to be located, she stepped off the depot platform and in doing so fell to the ground and upon the rail and track and sustained serious and permanent injuries.

The evidence is close and conflicting as to the degree of darkness which prevailed at the time and place appellee was injured, as bearing on appellee's due care for her own safety, and the negligence of appellant as alleged in the declaration.

It was disclosed by the evidence that upon the day of the accident the sun set at 5:25 P. M., and that the moon then in its first quarter set at 10:19 P. M. Whether the moon shown sufficiently at the time in question to afford any appreciable light, or whether it was then partially or temporarily obscured, are dis-

puted questions. It is conceded, however, that excepting the light which may have been afforded by the moon it was then so dark as to require artificial light to enable a person, in the exercise of reasonable care for his own safety, to make his way from the depot to the train platform.

It is uncontroverted that the two lamps in the depot waiting room were lighted and that the lamp upon the post near the cross-walk where appellee fell was not lighted. We are not persuaded that the lighted lamps in the depot waiting room shed any light at the place where appellee was injured. It is insisted on behalf of appellant that the place where appellee fell was sufficiently illuminated by the lighted lamps in the passenger coaches and by the four arc lamps heretofore mentioned.

The evidence leaves the mind in serious doubt as to whether or not the arc lamps were then lighted, and there is nothing in the evidence which discloses the extent to which said arc lamps when lighted would shed rays of light at the junction of the cross-walk and the depot platform. It is a matter of common knowledge that while the lamps in the dome of a passenger coach may illuminate the interior of the coach, they do not cast any considerable light on objects upon the outside, and that they are not relied upon by a railroad company to furnish sufficient light to enable passengers to get off and on its trains. The evidence bearing upon the material issues involved is of a character which requires substantial accuracy in the application of well recognized rules of evidence and in the instructions to the jury, to the end that the jury might not be influenced or prejudiced against appellant in their consideration and determination of the case.

Upon the cross-examination of Doctor F. C. McCormick, a witness called on behalf of appellee, counsel for appellant interrogated the witness as to his relations with the appellant, whether friendly or otherwise, and the witness stated that since May 23, 1906,

his relations with appellant had been friendly, or as it might be said indifferent. Counsel for appellant then asked the witness if it was not true that in May, June or July, 1906, he had had a difficulty with appellant, and the witness replied that it might be said there had been a little difficulty. Counsel for appellant then said: "And that difficulty has made you unfriendly to the C. & A. R. R. Co." The witness replied that it had not and that he had not been unfriendly to appellant since May, 1906. Upon his redirect examination the witness was asked by counsel for appellee what he referred to that might be termed a difficulty, and the witness was then permitted to answer over the objection of appellant, that there was a man hurt upon appellant's railroad by a train of appellant about ten or eleven o'clock at night; that the man had his arm cut off and crushed above the elbow, his leg crushed above the knee and his spine injured; that the man was picked up by the town marshal and two employes of appellant and brought down to the freight depot where the witness was called to attend him; that he was taken to the hospital where the witness amputated his arm and leg, and where he died within about twelve hours; that the witness presented his bill to appellant for his services which bill appellant refused to pay; that after some correspondence with the superintendent of appellant, the nature of which the witness detailed, he did not press the subject any further but let it go as a matter of profit and loss. There is no possible ground upon which the testimony of the witness as to this extraneous matter was competent, and in a case as close upon the facts as is the one at bar its effect could not have been other than to prejudice and influence the jury against appellant.

It was the province and duty of the trial court to pass upon the objections urged by counsel for appellant to such questions as counsel might deem incompetent and immaterial and the record discloses that

the trial court was called upon to perform this duty without cessation during the examination of almost every witness. In their zeal to serve their clients counsel sometimes indulge a habit of objecting when it must be apparent that no valid ground of objection exists. Objections of the character indicated do not tend to preserve a record but rather tend, as is suggested by counsel, to cause the jury to infer that the trial court, by repeated rulings against the objections, is adverse to the position of the objecting party upon the merits of the case. The injury resulting from such an inference by the jury, would be very appreciably obviated if counsel would limit their objections to matters which they believe in good faith to be objectionable.

The court did not err in refusing to permit the witness Henry V. Jones to state the reason why the lamp upon the post was not lighted. Negligence is not a matter of intention and any reason which the witness might have advanced would have been merely by way of argument and incompetent.

We have carefully considered all of the other objections urged by counsel on behalf of appellant and find nothing therein worthy of special mention, further than this, that a reasonably careful adherence by counsel to well established rules of law and the conservation of the interests of their several clients will, doubtless, upon another trial of the case, obviate all such questions.

For the error indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*