MARY RUTH JENKINS, ADMINISTRATRIX OF THE ESTATE OF D. C. JENKINS, v. NORTH CAROLINA DEPARTMENT OF MOTOR VEHICLES.

(Filed 10 October, 1956.)

**1. Negligence § 1—**

An intentional act of violence is not a negligent act.

**2. State § 3a—**

The State Tort Claims Act does not permit recovery for a wrongful and intentional injury, but by the terms of the Act waives the State's immunity only for injuries negligently inflicted. G.S. 143-291.

**3. Same—Findings of fact held to show that patrolman intentionally shot prisoner.**

Findings of fact to the effect that an armed patrolman, weighing 185 pounds, was taking an unarmed, intoxicated prisoner, weighing 130 pounds, into custody, that the patrolman after being assaulted by the prisoner, dragged the prisoner from the car, that during the fight between them the patrolman fired a bullet grazing the prisoner's chest, that the prisoner lost his footing and fell, and that as the prisoner was falling and while his back was toward the patrolman, the patrolman fired the fatal bullet into the prisoner's back, *held* to justify a finding and conclusion that the shooting was intentional, and therefore was not a negligent act within the purview of the State Tort Claims Act.

**4. Constitutional Law §§ 8a, 10c—**

The Supreme Court must construe an Act as written, the power to change the law being the exclusive province of the General Assembly.    ;

RODMAN, J., took no part in the consideration or decision of this case.

JOHNSON, J., not sitting.

PARKER, J., concurs in result.

APPEAL by defendant from *Pless, J.,* May Term, 1956, HAYWOOD Superior Court.

The plaintiff instituted this proceeding before the North Carolina Industrial Commission under the provisions of the Tort Claims Act to recover compensation for the alleged wrongful death of her intestate, D. C. Jenkins. The deputy commissioner, after hearing, made findings of fact, stated his conclusions of law, and awarded compensation in the sum of $8,000.

The hearing commissioner's findings of fact Nos. 1 to 7, inclusive, in substance are: At about 8:45 p.m. on Sunday, 13 June, 1953, Highway Patrolman Murrill went to Rock Hill Schoolhouse in Haywood County as a result of information that a difficulty was taking place there. He was accompanied by the local game protector. Both the patrolman and game protector were large men, each weighing approximately 185 pounds. The patrolman arrested D. C. Jenkins, age 23 years, and

weighing 130 pounds, upon a charge of operating a motor vehicle upon the public highway while under the influence of liquor and also upon the charge of public drunkenness. At the same time, one Franklin, companion of Jenkins, was also placed under arrest for public drunkenness. After searching both Jenkins and Franklin and ascertaining they were unarmed, the patrolman placed them in the back seat of the patrol car, Jenkins behind Murrill, who was driving, and Franklin behind Aiken, the game protector.

Finding of Fact No. 8 is here quoted in full:

"That after the patrol car had traveled just a few feet on the highway, Jenkins suddenly reached over the seat and grabbed Murrill around the neck; that the patrolman thereupon stopped the car, opened the door with his left elbow, and pulled the deceased out of the car; that the two men then fought from the car across the highway and a drainage ditch, into a field on the opposite side of the road; that part of the time the two were on the ground; that, as the two were fighting in the field, Jenkins made an effort to get the patrolman's gun which was in his holster at the patrolman's side."

For reasons that will hereafter appear, the hearing commissioner's finding of fact No. 9 is not repeated here. From the findings, conclusions and award of compensation made by the deputy commissioner, the defendant appealed to and asked a review by the full commission upon assigned errors. The full commission affirmed and adopted as its own all findings of fact of the hearing commissioner, except No. 9, which was stricken out and the following finding made by the full commission:

"9. That as the two were fighting and as they were approximately fifty feet from the patrol car, Murrill drew his gun, stepped back approximately ten feet from Jenkins, and told him not to come toward him any more; that Jenkins again started toward Murrill, whereupon the patrolman shot twice in the ground in front of the deceased; that Jenkins continued to come toward Murrill, whereupon the patrolman struck Jenkins, knocking him sideways; that Murrill then fired again and the bullet grazed the deceased's chest; that the deceased then turned back toward the patrolman, but lost his footing and fell; that as the deceased was falling, and as the deceased's back was toward the patrolman, Murrill fired again and the fatal bullet struck the deceased in the back, approximately four inches to the right of his spine; that Jenkins had nothing in his hands nor did he appear to have anything in them while he was advancing toward the patrolman; that the damages

sustained in this case were not occasioned by the negligence of a State employee."

The full commission by a two to one vote concluded that the act of Patrolman Murrill in shooting D. C. Jenkins was an intentional and, therefore, not a negligent act as contemplated by the Tort Claims Statute. Also by a two to one vote the full commission denied recovery.

From the findings, conclusions and award of the full commission, the claimant appealed to the Superior Court of Haywood County. Judge Pless, after hearing, concluded the findings of fact made by the full commission show that D. C. Jenkins met his death as the result of a negligent act on the part of Patrolman Murrill, reversed the decision of the Commission and remanded the case to the Commission for the entry of an award allowing compensation. The defendant excepted and appealed.

*William B. Rodman, Jr., Attorney General, Claude L. Love, Assistant Attorney General, and Harvey W. Marcus, Staff Attorney, for the State. George H. Ward and Felix E. Alley, Jr., for plaintiff, appellee.*

HIGGINS, J.  Presented here for decision is the question whether recovery under the Tort Claims Statute for the negligent act of a State agent is authorized where the negligent act complained of is the intentional shooting of a prisoner by a member of the State Highway Patrol who had him in custody.  That the unjustified shooting under such circumstances is a tort is not open to serious question.  If the Act, G.S. 143-291, authorized recovery for torts committed by employees of the State there would be little difficulty in sustaining the judgment of the Superior Court.  While the North Carolina Industrial Commission is constituted a court to hear and pass on tort claims, the Act specifically sets out the essentials necessary to be shown by evidence and found by the Commission in order to permit recovery: "The Industrial Commission shall determine whether or not each individual claim arose *as a result of a negligent act* (emphasis added) of a State employee while acting in the scope of his employment and without contributory negligence on the part of the claimant."  As of the date this claim was filed, the absence of contributory negligence had to be shown by the claimant as a part of his case. *Floyd v. Highway Commission,* 241 N.C. 461, 85 S. E. 2d 703.  (Chapter 400, Session Laws of 1955, amended the original Act and made contributory negligence a matter of defense.)  The amendment, however, did not become effective until 31 March, 1955, and provided that it should relate only to claims arising after that date.

The Commission found "that Jenkins continued to come toward Murrill, whereupon the patrolman struck Jenkins, knocking him sideways;

that Murrill then fired again and the bullet grazed the deceased's chest; that the deceased then turned back towards the patrolman but lost his footing and fell; and as the deceased's back was turned toward the patrolman, Murrill fired again and the fatal bullet struck the deceased in the back." The deceased was unarmed. Thus we have an unarmed, intoxicated boy, 23 years of age, five feet seven inches tall, and weighing 130 pounds, a prisoner in the custody of an armed officer weighing 185 pounds. It was the duty of the officer to take the boy to jail alive to answer for a misdemeanor. Instead, the boy was taken to the morgue, shot in the back. There was sufficient competent evidence before the Commission to permit and justify the finding and conclusion that the shooting in this case was intentional.

While the courts of the several states are not in agreement as to the various acts and omissions which may be included in the term "negligence," there is, however, general agreement that an intentional act of violence is not a negligent act.

At common law, actions for trespass and trespass on the case provided remedies for different types of injuries: The former "for forcible, direct injuries, whether to persons or property," and the latter "for wrongful conduct resulting in injuries which were not forcible and not direct." Law of Torts, Prosser, Ch. 2, pp. 26, 27. In the former, the injury was intended. In the latter, injury was not intended but resulted from the careless or unlawful act. Negligence, in all its various shades of meaning, is an outgrowth of the action of trespass on the case and does not include intentional acts of violence. For example, an automobile driver operates his car in violation of the speed law and in so doing inflicts injury as a proximate result, his liability is based on his negligent conduct. On the other hand, if the driver intentionally runs over a person it makes no difference whether the speed is excessive or not, the driver is guilty of an assault and if death results, of manslaughter or murder. If injury was intended it makes no difference whether the weapon used was an automobile or a pistol. Such willful conduct is beyond and outside the realm of negligence.

As was said by *Justice Adams* in *Ballew v. R. R.*, 186 N.C. 704, 120 S.E. 334, "The authorities generally hold that the doctrine of contributory negligence as a bar to recovery has no application in an action which is founded on intentional violence, as in the case of an assault and battery; but intentionable violence *is not negligence* (emphasis added) and without negligence on the part of the defendant there can be no contributory negligence on the part of the plaintiff." To like effect is the opinion of *Justice Bobbitt* in *Hinson v. Dawson, ante*, 23, 92 S.E. 2d 393: "An analysis of our decisions impels the conclusion that this Court, in reference to gross negligence, has used the term in the sense of wanton conduct. *Negligence, a failure to use due care, be*

*it slight or extreme, connotes inadvertence.* Wantonness, on the other hand, connotes intentional wrongdoing." (Emphasis added.)

In addition to the above, the position here taken finds support in the following cases: *Gallagher v. Davis,* 37 Del. 380, 183 A. 620; *Kasnovitch v. George,* 348 Pa. 199, 34 A. 2d 523; *Seamon Store Co. v. Bonner,* 195 Ark. 563, 113 S.W. 2d 1106; *Millington v. Hiedloff,* 96 Colo. 581, 45 P. 2d 937; *Kile v. Kile,* 178 Okla. 576, 63 P. 2d 753; *Haacke v. Lease,* Ohio App., 41 N.E. 23 590; *Pittsburgh C. C. & S. L. R. R. Co. v. Farrell,* 39 Ind. App. 515; *Walker v. Chicago & A. R. Co.,* 149 Ill. App. 406; *Lockwood v. Belle City Ry. Co.,* 92 Wis. 97, 65 N.W. 866; *Louisville & N. R. Co. v. Perkins,* 152 Ala. 133, 44 So. 602; *Gardner v. Heartt,* N. Y., 3 Denio 232; *Pitkin v. N. Y. & N. E. R. Co.,* 64 Conn. 482, 30 A. 772; *Murphy v. Barlow Realty Co.,* 206 Minn. 527, 289 N.W. 563; *Michels v. Crouch,* Tex. Civ. App., 122 S.W. 2d 211; *Gimenez v. Rissen,* 12 Cal. App. 2d 152, 55 P. 2d 292; *Gibeline v. Smith,* 106 Mo. App. 545, 80 S.W. 961; *St. Louis & S. F. R. R. Co. v. Boush,* 68 Okla. 301, 174 P. 1036; *Schulte v. Louisville & N. R. Co.,* 128 Ky. 627, 108 S.W. 943; *Kuelling v. Roderick Lean Mfg. Co.,* 183 N.Y. 78, 75 N.E. 1098; *Robinson v. Township,* 123 N.J.L. 525, 9 A. 2d 300.

Under our Tort Claims Act, contributory negligence on the part of the plaintiff is a complete defense to the claim. Contributory negligence is no defense to an intentional tort. *Stewart v. Cab Co.,* 227 N.C. 368, 42 S.E. 2d 405; *Ballew v. R. R., supra; Fry v. Utilities Co.,* 183 N.C. 281, 111 S.E. 354. That contributory negligence under the wording of the Act will defeat a claim supports the view that it was not the intention of the Legislature to allow recovery for torts involving violence.

In the case of *Lowe v. Department of Motor Vehicles, ante,* 353, 93 S.E. 2d 448, the Commission found that the patrolman was negligent in using his pistol but that its discharge was an accident. This finding of negligence was sufficient to support the recovery.

The claimant here, in support of recovery, cites cases arising under the Federal Tort Claims Act. But that Act, unlike ours, provides for recovery not only for negligent acts, but also for *wrongful acts* on the part of an employee. After authorizing recovery for wrongful acts, however, the Congress provided that the Act shall not apply "to any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, and interference with contract rights." Our Act needs no such exceptions for it does not permit recovery for wrongful acts. That contributory negligence is made a defense lends powerful support to the view that the *negligent acts* contemplated are those to which *contributory negligence would be a defense.*

Strong and appealing argument can be advanced why compensation should be allowed in this case, upon the ground that the more grievous the fault on the part of the agent of the State, the more readily the State should compensate for the injury. But the Court must construe the Act as written. The Legislature has power to change the law. The Court does not have that power.

The judgment of the Superior Court of Haywood County is

Reversed.

RODMAN, J., took no part in the consideration or decision of this case.

JOHNSON, J., not sitting.

PARKER, J., concurs in result.